

DA 07-0596, DA 08-0073, DA 08-0074, DA 08-0278

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 28

MONTANA PETROLEUM TANK RELEASE
COMPENSATION BOARD,

     Plaintiff and Appellee,

v.

NORTHWESTERN NATIONAL CASUALTY
COMPANY, a member of Highlands Insurance
Company; and DOES 1-25,

     Defendants and Appellants.

MONTANA PETROLEUM TANK RELEASE
COMPENSATION BOARD,

     Plaintiff and Appellee,

v.

NORTHWESTERN NATIONAL CASUALTY
COMPANY, a member of Highlands Insurance
Company; ACE PROPERTY & CASUALTY
INSURANCE COMPANY, formerly AETNA
INSURANCE COMPANY, and DOES 1-25,

     Defendants and Appellants.

APPEAL FROM:    District Court of the First Judicial District,
                In and For the County of Lewis and Clark, Cause No. ADV-2003-126,
                Honorable Dorothy McCarter, Presiding Judge;
                Cause Nos. CDV-2004-834 and CDV-2005-161,
                Honorable Thomas C. Honzel, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

          Robert C. Lukes, Garlington, Lohn & Robinson, PLLP, Missoula,
          Montana

For Appellee:

R. Allan Payne, James L. Shuler, Doney, Crowley, Bloomquist Payne Uda P.C., Helena, Montana

Submitted on Briefs: December 31, 2008

Decided: February 3, 2009

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1    Northwestern National Casualty Company, Employers Mutual Casualty Company, and Ace Property & Casualty Insurance Company (collectively Northwestern) appeal several orders entered in the First Judicial District. These orders were entered in two cases before the Honorable Thomas C. Honzel (Cause Numbers CDV-2005-161 and CDV-2004-834), and one before the Honorable Dorothy McCarter (Cause Number ADV-2003-126). These three District Court orders involved essentially the same parties, addressed the same legal issues, and reached the same legal conclusions; therefore, we have consolidated them for purposes of appeal. The effect of these orders was to require Northwestern to post bond or obtain a certificate of authority (COA) pursuant to § 33-1-615, MCA, if it wished to file any pleadings in response to the actions instituted against it in First Judicial District by the Montana Petroleum Tank Release Compensation Board (Board). For the reasons set forth below, we reverse these three orders and remand these causes to their respective District Courts for further proceedings consistent with this Opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2    On May 30, 2003, Northwestern merged with Highlands Insurance Company (Highlands). Highlands had obtained a COA to transact insurance in Montana on July 6, 1964. Sometime in 2003, Highlands/Northwestern went into receivership in Texas. On July 8, 2003, the Montana Insurance Commissioner suspended the COA held by Highlands/Northwestern. After the COA was suspended, Highlands/Northwestern stopped paying its annual certificate renewal fees. This COA was subsequently

3

terminated for non-payment of fees on May 31, 2005. It is undisputed that the insurance contracts at issue in this case, as discussed directly below, were issued by Highlands while it was authorized to transact insurance business in the state of Montana.

¶3 The Board is a statutorily-created environmental advisory board which is authorized to reimburse owners and operators of petroleum tanks from the Montana Petroleum Tank Release Fund for eligible costs and expenses they incur in responding to releases of petroleum products from their storage tanks. Highlands/Northwestern has, at separate times, provided insurance coverage to the following entities for the following sites: (1) Maverik Country Stores, Inc., for a convenience store and service station located in Great Falls, Montana; (2) the Treasure County Board of Commissioners for the Treasure County Road Shop in Hysham, Montana; and (3) Jack and Kathryn Northway d/b/a Northway Oil for a service station and bulk plant on state highway 287, just north of Ennis, Montana. All of these sites have had petroleum releases at one point or another, and in each instance the Board compensated the respective owners or their successors in interest for the costs associated with responding to those releases. After paying these costs, the Board filed the complaints at issue against Northwestern seeking subrogation and compensation under the insurance policies Highlands had previously issued to these owners and operators. These complaints were originally filed in March of 2003, November of 2004, and March of 2005. When the State Auditor's Office attempted service it initially used an incorrect address for Northwestern. This problem was later corrected and Northwestern was properly served in all three actions on May 8, 2007.

4

¶4    On May 31, 2007, default was entered against Northwestern in Cause Numbers CDV-2004-834 and CDV-2005-161 before Judge Honzel, and in Cause Number ADV-2003-126 before Judge McCarter.  On June 4, 2007, the Board obtained default judgment against Northwestern in cause number ADV-2003-126 before Judge McCarter. Northwestern then filed a motion to set aside the default judgment, and the Board responded by moving to strike Northwestern's motion.  Judge McCarter issued a ruling on July 24, 2007, granting the Board's motion to strike.

¶5    The basis for Judge McCarter's ruling is as follows.  The Montana Insurance Code, Title 33, MCA, controls and regulates the practice of insurance in Montana.  Prior to transacting insurance business in Montana, an insurer must become an "authorized insurer" and obtain a COA from the Montana Insurance Commissioner.  Authorized insurers are required to appoint the Insurance Commissioner to receive service of process pursuant to § 33-1-601, MCA.  This statute reads as follows:

> **33-1-601.  Commissioner — attorney for service of process.**  (1) Each insurer applying for authority to transact insurance in this state shall appoint the commissioner as its attorney to receive service of legal process issued against it in Montana.  Service of legal process under this section means a summons and a complaint.  The appointment must be made on a form designated and furnished by the commissioner.  *The appointment is irrevocable, binds the insurer and any successor in interest or to the assets or liabilities of the insurer, and remains in effect as long as there is in force in Montana any contract made by the insurer or obligations arising from a contract.*

(Emphasis added.)

¶6    By contrast, the insurance code defines an "unauthorized insurer" as "an insurer not authorized by a certificate of authority issued by the commissioner [of insurance] to

5

transact insurance in this state." Section 33-1-201(10), MCA. Service of process upon unauthorized insurers is accomplished pursuant to §§ 33-1-612, -613[1] and -615, MCA, which read in pertinent part as follows:

> **33-1-612. Commissioner — process agent for unauthorized insurer doing business in state.** Delivery, effectuation, or solicitation of any insurance contract, by mail or otherwise, within this state by an unauthorized insurer, or the performance within this state of any other service or transaction connected with such insurance by or on behalf of such insurer, shall be deemed to constitute an appointment by such insurer of the commissioner and his successors in office as its attorney, upon whom may be served all lawful process issued within this state in any action or proceeding against such insurer arising out of any such contract or transaction, and shall be deemed to signify the insurer's agreement that any such service of process shall have the same legal effect and validity as personal service of process upon it in this state.

> **33-1-615. Defense of action by unauthorized insurer.** (1) Before an unauthorized insurer shall file or cause to be filed any pleading in any action or proceeding instituted against it under 33-1-612 and 33-1-613, such insurer shall:
> (a) procure a certificate of authority to transact insurance in this state;
> b) deposit with the clerk of the court in which such action or proceeding is pending cash or securities or file with such clerk a bond with good and sufficient sureties, to be approved by the court, in an amount to be fixed by the court sufficient to secure the payment of any final judgment which may be rendered in such action.

¶7    As is clear from these statutes, unauthorized insurers are prohibited from filing pleadings in response to any actions or proceedings until they either obtain a COA, or post bond. Because Northwestern did not have a COA at the time it sought to respond to the default judgment, the Board argued that Northwestern was an unauthorized insurer within the meaning of § 33-1-615, MCA, and thus was required to post bond or obtain a

---

[1] Section 33-1-613, MCA, describes the mechanics of providing service of process upon unauthorized insurers and is not relevant in the case at bar.

COA as a precondition to responding to suit. Judge McCarter agreed and held that Northwestern could not participate in the suit against it because it did not have a current COA and had not posted any bond with the clerk of court. As stated by Judge McCarter:

> The statutes pertaining to this issue are easily interpreted harmoniously so that each is meaningful and effective: The insurer is generally not required to maintain certification with respect to insurance policies issued while it was certified for the policies to remain valid and enforceable. However, in the event the insurer becomes involved in litigation involving the policies, such as the present lawsuit, it must either obtain certification or post bond in accordance with Section 33-1-612, MCA.

¶8 Northwestern had also moved to set aside the default judgments entered in the two cases before Judge Honzel. The Board replied to these motions as it had to Northwestern's motion in Judge McCarter's court, by moving to strike the motions in both cases. On December 26, 2007, Judge Honzel granted the Board's motions in both of the cases before him on grounds similar to that of Judge McCarter's, holding that § 33-1-615, MCA, applied to Northwestern and required it to either post bond or obtain a valid COA as a prerequisite to responding to the Board's suit. Judge Honzel stated his holding in both cases as follows:

> Section 33-1-601, MCA, requires that an insurer appoint the State Auditor as its attorney to receive service of legal process issued against it in Montana. Section 33-1-612, MCA, appoints the State Auditor, by operation of law, to receive service of legal process if an unauthorized insurer transacts business in Montana. An unauthorized insurer is "an insurer not authorized by a certificate of authority issued by the commissioner [State Auditor] to transact insurance in this state." Section 33-1-201(10), MCA.
> Here, Northwestern is an unauthorized insurer. Its certificate of authority lapsed May 30, 2003. Accordingly, Section 33-1-615, MCA, applies, and Northwestern must either obtain a certificate of authority in Montana, or deposit sufficient security or post a pond with the court prior to filing a pleading. While Northwestern contends that Section 33-1-601,

7

MCA, states that the initial appointment of the Statue Auditor to receive service of process is irrevocable, that statute applies to an authorized insurer transacting business in Montana.

¶9 In the meantime, on October 4, 2007, Northwestern appealed Judge McCarter's decision in Cause Number ADV-2003-126 to this Court. Northwestern maintained that it had recently obtained a COA and should therefore be permitted to respond to the Board's suit. After considering the matter, we remanded the case to Judge McCarter on January 16, 2008, to determine Northwestern's status with respect to its authority to defend itself in the suit. In a separate order dated February 6, 2008, we dismissed Northwestern's appeal without prejudice. That same day, Northwestern filed a notice of appeal in the two cases before Judge Honzel.

¶10 Upon remand, Judge McCarter once again determined that Northwestern was required to comply with § 33-1-615, MCA, if it wished to respond to suit. In her findings, Judge McCarter noted that Northwestern/Highlands paid all of its past-due fees, and had its COA reinstated to suspended status on December 10, 2007. However, because Northwestern's COA was in suspended status, Judge McCarter held that it would be unable to rely on or use the COA for any purpose—including participation in the lawsuit. Judge McCarter noted that the Montana Insurance Code itself defined "suspend" as "to bar the use of a person's license for a period of time." Section 33-17-102(22), MCA. Judge McCarter also noted that Black's Law Dictionary defined suspend as "to cause to cease for a time," or "to discontinue temporarily, but with an expectation or purpose of resumption." Based on these statutory and dictionary definitions of the term "suspend," Judge McCarter affirmed her previous order granting the Board's motion to

8

strike on May 21, 2008, and held that Northwestern was required to post pond in accordance with § 33-1-615(1), MCA, if it wished to respond to suit.

¶11 Northwestern has now timely appealed this final ruling of Judge McCarter, as well as the similar rulings of Judge Honzel. We state the sole issue presented by these three cases as follows:

¶12 **Issue:** *Did the District Courts err in concluding that Northwestern was required to comply with the requirements of § 33-1-615, MCA, prior to responding to suit?*

## STANDARD OF REVIEW

¶13 We review a district court's conclusions of law for correctness. *In re Charles M. Bair Family Trust*, 2008 MT 144, ¶ 28, 343 Mont. 138, 183 P.3d 61.

## DISCUSSION

¶14 Northwestern argues that the District Courts in each case erred in granting the Board's motions to strike and holding that it was required to post bond or obtain a current COA as a prerequisite to responding to suit. Northwestern points out that the Northwestern/Highlands COA was first obtained in the 1960's. When it obtained this COA, Northwestern/Highlands was required to appoint the Insurance Commissioner to accept service of process on its behalf pursuant to § 33-1-601, MCA. Northwestern notes that by the plain language of the statute this appointment, once made, is "irrevocable . . . and remains in effect as long as there is in force in Montana any contract made by the insurer or obligations arising from a contract." Section 33-1-601(1), MCA. Here, the Board has sued to collect money under insurance contracts issued by Northwestern/Highlands while it had a valid COA. Thus, it argues, the Board's suit is

9

controlled by § 33-1-601, MCA, and the requirements of § 33-1-615, MCA, simply do not apply.

¶15   Although Northwestern and the Board raise other arguments both for and against the District Courts' decisions, we find the foregoing argument as advanced by Northwestern to be dispositive. The bond and COA requirements of § 33-1-615, MCA, are triggered only when service is effectuated pursuant to §§ 33-1-612 and -613, MCA. In this case, the suits against Northwestern/Highlands are all based on insurance contracts, and accompanying contractual obligations, that were executed under valid COAs while it was an authorized insurer. As § 33-1-601, MCA, makes clear, appointment of service under these contracts is "irrevocable" as long as any of the contracts or corresponding obligations executed by Northwestern/Highlands remain in force. Indeed, the Board's suits are premised on the notion that these insurance contracts have given rise to obligations which are still in force and permit the Board to seek subrogation and compensation. The Board is not suing Northwestern based on insurance contracts it issued while it was an unauthorized insurer. Thus, service of process for suits based on these contracts must have occurred under § 33-1-601, MCA, and not §§ 33-1-612 or -613, MCA. The significance of the termination or suspension of Northwestern's COA is that it is not currently authorized to transact insurance in Montana. *See* § 33-1-201(5), (9), (10), MCA. However, Northwestern's current inability to transact insurance in Montana does not mean or even imply that its previous "irrevocable" appointment of service under § 33-1-601, MCA, for insurance transactions completed while it was an authorized insurer is somehow revoked or suspended. Thus,

10

Northwestern is not required to post bond or obtain a COA in order to respond to the Board's suit.

## CONCLUSION

¶16    We conclude that the District Courts erred in holding that § 33-1-615, MCA, applied in the instant case, requiring Northwestern either to post bond or obtain a current COA.  As these suits were instituted based on alleged contractual obligations which arose while Northwestern/Highlands was an authorized insurer, service of process in these suits was controlled by § 33-1-601, MCA.  Accordingly, we reverse and remand these cases to their respective District Courts for further proceedings consistent with this Opinion.


/S/ PATRICIA COTTER


We concur:

/S/ JOHN WARNER
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE